Good morning. Good morning, Your Honors. Holly Boyer on behalf of Plaintiff. It's okay with Your Honors, I'd like to reserve five minutes of my time for rebuttal. Sure. Watch the clock, please. Your Honors, viewing the evidence and reasonable inferences therefrom collectively and construed in the light most favorable to Plaintiff Gilberto Santillan, as opposed to his employer, Waste Management, the evidence is such that a reasonable juror could conclude that Santillan was wrongfully terminated. Your Honors, under the McDonnell-Douglas test, the first step in the framework of the analysis is whether or not there was a prima facie case of age discrimination or retaliation, as alleged in this case. For age discrimination, we know that there are four elements. The first, that at the time of the adverse action, the plaintiff was over the age of 40. Here, the plaintiff was 53 years old at the time of his termination. Second and third is that an adverse employment action happened and that at the time he was satisfactorily performing his or her job. Here we know that happened, he was terminated. And after 32 years of stellar service, which Waste Management, when they tried to get their contract renewed in 2011 with the city of Manhattan Beach, they actually used Santillan as evidence of their commitment to service and loyalty to the community. And it was after they got the contract that he was then, a couple months later, terminated. As to the fourth element is the circumstances giving rise to an inference of age discrimination. And it's this element that the district court focused on and held that plaintiff could not establish any evidence to support this element as a matter of law. The evidence, one way to show a circumstance giving rise to age discrimination is by demonstrating that the employee was replaced by a significantly younger person. And what evidence is there that his replacement, Mr. Vartanian, was substantially younger? Well, we know that plaintiff was 53 and we know that the information as to how old Vartanian was is within defendant's possession, their employer. We know that Maria Diaz, the HR person who submitted a declaration in support of the motion, stated in her declaration, Mr. Vartanian is... Mr. Santillan is 53. Right. So is it enough to carry the burden of establishing a prima facie case to say, well, the information is within the defendant's possession? Or do you have to come forward during the discovery phase with some indication as to the age gap? And then as a follow-up to that, if we think that there is no evidence or insufficient evidence in the record as to the age gap, do you have other evidence that can then meet that fourth element? Sure. Let me address those two points. So for the first point, I think that you have to look at the facts of the case. And here when you look at the facts regarding Maria Diaz's declaration and the amount of specificity she was able to give other claims, precise start and end dates for the plaintiff, home address, we know that the information as to his birthday is likely at her fingertips. And I think the omission of exactly how old the replacement employee was gives rise to an inference that there was a significant difference. And I think that beyond that, we also know from the record that in the depositions of four other employees, including supervisorial employees, they were asked how old was the replacement attorney. And all of those employees testified that they did not know. And I think what's telling is when asked, okay, could you provide an estimate? Is he between 20 and 40? Is he between 40 and 60? These employees, after being advised by counsel, replied uniformly, no. We can't even provide you an estimate of his age. So I think those circumstances give rise to at least an inference that there is a significant difference. And I want to highlight that that significant difference in age could be as young as 5 years, could be 8 years, could be 9 years. The courts have said that here we have a 13-year potential gap between these two employees. And so I think that the fact that this information was asked for, not given in those depositions, and that in that declaration of Maria Diaz there's a glaring omission of what that actual age is, again gives rise to the inference. The other evidence as to address the court's other request would be Mr. Santian's own deposition testimony, wherein he stated that four or five other drivers who were older than plaintiff had similarly been written up for, quote-unquote, accidents and terminated. And I think this evidence gives rise to an inference that there's age discrimination going on. And I want to highlight, is there indication in his deposition testimony as to the time period during which these other individuals were written up purportedly for accident violations? I believe it's on the record at 631, 632 of the ER. And it says at his deposition he testified that not only that the only older employees terminated because of incurring four or more infractions during a 12-month period. I'm not sure if that specific question as to timing was asked. You know, he's just testifying about the four or five similar aging employees being terminated. And I think what's important, too, is kind of knowing that the management changed, you know, and that's when all of this came up. After 32 years of service, he's never written up, and all of a sudden he's written up multiple times. And I think that would be the same with these other drivers, the inference. And one thing I want to kind of highlight is that the standard of review and the lens in which we look at these employment cases takes into consideration that this fourth element of the McDonnell-Douglas test concerns somebody's intent, somebody's motive. That's not easy to prove on paper. And the courts have repeatedly said that because of this, in an employer-employee context where there's discrimination, the need and the showing that is required of the plaintiff at this preliminary stage is not onerous. Minimal proof is necessary. Very little evidence. These are quotes from cases cited in our briefs. Are we focusing just on the July termination and not on the initial termination because all that was released pursuant to the settlement agreement? So I think a couple things on that release. I think we can focus on the latter determination, the July 2012. And I think when we do, if we begin with that analysis of just focusing on that termination, we can absolutely consider what happened and what occurred for that first termination. I don't think that that release, purported release, would absolve or foreclose, I should say.  So your argument is that the evidence concerning the conduct before the settlement agreement was reached is properly considered in determining what happened with regards to the July termination. But the claims themselves, the retaliation claim, the age discrimination claims, really if you're being sent back to go to trial, you would go to trial just on the July termination. Would that be fair to say? It wasn't clear to me what the position was with regard to the two terminations on the briefing. I think in terms of the retaliation, that would only apply to the latter, the July, because the retaliatory conduct was the coming forward and appealing the initial termination. With regards to age discrimination, I would say that it concerns both terminations. It was prevalent in the first, and I don't think that release could be used as a shield against plaintiff because of the circumstances that occurred and the evidence of age discrimination concerning that termination and the release. That said, I think that even if we're going back to trial just on the July termination, that first December termination is absolutely evidence of the age discrimination that is the predicate for the July termination. No, I understand that argument, but, you know, we've got to be specific in sorting it out because if we are, I'm not saying we would, but if we were to send it back for trial, then it would be helpful to the district court to know how to craft the jury instructions and whether the age discrimination claim relates to the December, the initial December firing as well. So explain to me why the release is not sufficient to basically remove the age discrimination claim as to the December termination. Okay, so setting aside the argument that it would obviously be admissible for the July, then just focusing on age discrimination claim for December termination, I would say that the release does not foreclose those claims because the release, well, two things. One, waste management didn't comply with its terms of the release. Pursuant to the settlement release, if plaintiff did the background checks, did the physical tests and all of that, he would be reinstated. There was no time limit for this e-verify procedure, Form I-9, in the settlement agreement. So if we're looking strictly at the terms of the settlement agreement, he was simply required to meet these background checks. He was terminated three days into his employment for allegedly not meeting those requirements. Our position is that timeline that was imposed in that termination was really pretext, not necessary, and not a condition of the settlement agreement. So I would argue that the breach puts the other termination back on the table. Yes. All right, you're running short on time, Judge Ferguson. Was your client required to meet that final test where e-verify would indicate whether he was here legally or not? And was he required to meet that test? We don't believe he was. By law, no. I don't care what you believe. I mean, was he required to meet that test? My position would be no. What? Our position would be no. Okay. On what basis? Well, two basis. One, it was not because he was an employee returning after being wrongfully discharged. He, by law, and the code cited in our brief, was not required to complete the Form I-9 process, procedure. Secondly, I would say that he was not given enough time notice for what documents he needed to comply with that request. And so his... Well, when he was first hired, that requirement was not on the books. Right. All right. And then if you look at the regulations, they tell you that if you were hired at a time when the requirement was not on the book, and you're rehired or you're brought back, you don't have to meet the here-verified requirement. Right? I believe if you are hired when it's not on the books and then rehired pursuant to a wrongful discharge settlement, as in this case, then you don't need to comply with the Form I-9 requirements. No. What else does that provision tell us? Well, that provision, which is 8 Code of Federal Regulations, Section 274A-2, states that you're not, when an employee comes back and is rehired pursuant to that agreement based on a wrongful discharge claim, they don't need to comply with that Form I-9 procedure. So specific to this fax, there wouldn't need to be that compliance for plaintiff. For other situations, I'm not sure if it would be different if he was rehired for some other reason or purpose. So he was not required to meet the here-verified requirement? He was not required to go through with the Form I-9 requirements of showing those documentation. And I would add that even if he was required pursuant to the settlement agreement or otherwise, that timeline, and I think what's really relevant in the timeline is that he's told before he starts back at work, five days before, hey, you need to bring these documents to comply with e-Verify. Here's a list of the documents you need. He reads the list. He brings what he's required to, what's asked of him under the list. He gets to work on the first day. Maria Diaz, the HR employee, says, these aren't the right documents. You fall under this category. You need to bring this document, which is an authorization card. He goes home, brings what he believes is the authorization card the next day. She says, oh, you don't have an expiration date for this card. Go back and find it. He goes back home, tries to find it, cannot find it, arrives the next day, and they terminate him for not having that expiration date. That timeline is not required, and therefore we think that was also a basis for the pretext and for the discrimination claim. All right, thank you. We've taken you down to 34 seconds, so I'll put a couple of minutes on the clock for rebuttal when you come back. Thank you. Good morning. May it please the Court. I'm Chris Bowman of Fisher & Phillips on behalf of USA Waste. The trial court's decision granting summary judgment on behalf of USA Waste should be affirmed by this court. The trial court's decision was correct for three simple reasons. Number one, Mr. Santian released any claims he had regarding his December 2011 termination, including age discrimination, retaliation for engaging counsel, or any other basis that could support a claim for wrongful termination in violation of public policy. Notably, despite being alleged at the trial court level, Mr. Santian has one claim left because he abandoned his three wage and hour claims. Those claims are not before you today. Point two, Mr. Santian grieved his December 2011 termination with counsel. But didn't your client have to know that there was this exception for an employee, a person who was hired before the verified requirement came on the books? I can't say to what my client knew at the time they were negotiating the grievance, Your Honor. That's a regulation. Is that right? We have to charge him with knowledge of it. And so you can argue that your client set this gentleman up for failure. They knew that he was never going to pass that e-verify requirement. There's no evidence. But they knew he was here illegally. And they've been working for him, what, how many years, 32 years? Long, long time. There's no evidence in the record, Your Honor. And there's also, isn't there some evidence in the record that Kobzoff, who was the supervisor, discharged a number of other people who were Hispanic? No, Your Honor. There's no evidence of that. The only evidence is Mr. Santian's testimony, which he provides no detail about these four or five other individuals who were terminated for having accidents in a 12-month rolling period. There's no evidence about the circumstances of those people, if in fact they were terminated. Well, if you go through the record carefully, thick, thick thing, you'll find evidence of that. I respectfully disagree, Your Honor. And as the trial judge noted, there's no substantial or specific evidence indicating that those individuals were treated differently than younger employees in a similarly situated circumstance. Can I have you focus on the retaliation claim and specifically on the prong of whether your client offered a legitimate reason for the July termination, which is the prong that the district court rested its analysis on? Now, USA Way sent a letter out, right, proffering reasons for the termination. And there were two. One is that he did not comply with the Immigration Control and Reform Act. And two, he violated the terms of the settlement agreement because it was contingent on passing E-Verify. So if I could just take the first one. What law or regulation requires him to go through E-Verify? The Immigration Reform and Control Act governs that obligation. Which provision? Because the provision that I'm looking at that was cited below says that he's not or he is deemed to be a continuing employee if he's reinstated pursuant to a settlement agreement. So he seems to fall squarely within the category of individuals who's deemed to be continuing in employment. So therefore, he's not subject to E-Verify. Was there another provision, either statutory or regulatory provision, that you're relying on that was not cited in this case? No, we're relying upon the settlement agreement that he signed with the advice of his lawyers and the union. All right. Well, there were two reasons proffered. I'm going to separate them. One is a suggestion by USA Waste that he was required by law to pass E-Verify. And I'm looking at the regulation, and it says he's not required by law to pass E-Verify. So what is your response to that? My response is that that is not – well, it doesn't apply. He was required to pass E-Verify. Under what regulatory provision? Under the terms of the Immigration Reform Control Act, as well as his settlement agreement. Specifically, what regulation are you relying on to say that somebody in his situation is required to pass E-Verify? I know there was an opinion rendered by one of the witnesses that he was required by law, but that opinion isn't supported by any specific citation to any regulation or statute that I'm aware of. So I'm trying to pin you down on what regulatory authority you're relying on to put him in the category of individuals who have to pass E-Verify. Well, aside from the agreement he agreed with his union and council, just the Immigration Reform Control Act, period. What section? That's a massive law. It's like saying federal law requires it. I can't point to a specific section. Well, see, that's the problem. Because the section that was pointed to says he's not required to, so is there something else within the – setting aside whether you can pick and choose the regulations that apply to him, if he's not required to pass E-Verify, then he's not required by law to pass E-Verify unless you can point to some other provision that we're not aware of. Well, that was a specific term that he agreed to. All right, so the settlement agreement. Is there any – which is the second basis for terminating him because he didn't comport or comply with the settlement agreement. Does the settlement agreement indicate specifically what forms he's supposed to submit or the timeframe within which he would have to submit those documents? It does not. It says he has to pass E-Verify. And as the trial court noted, there is no E-Verify without the I-9. And Mr. Santeon, when he appeared for his first day of employment on July 16th, indicated in completing Section 1 that he was an alien authorized to work. If he makes that election, he has no choice but to establish that by showing his alien authorization card and its expiration date. And he was given multiple chances to do so and failed. And that's the reason that USA Waste terminated his employment. And that specific termination decision is explicitly provided for in the last chance agreement, which was Exhibit A to the settlement release. And it says that if he fails to comply with any of the terms of his settlement agreement, USA Waste can terminate his employment without recourse. But your client had to know that he was not required to satisfy the requirements of that particular section. Your Honor, there's no evidence in the record about what my client knew or was thinking at the time. Well, he's supposed to know the law. He's the employer. The evidence is that Mr. Santian engaged counsel of his choice. This gentleman doesn't speak English. Is that right? I don't know. That's been represented, but I can't say for sure. Well, that's what the record shows. He doesn't speak English. The record also shows that Mr. Santian's counsel admitted during the oral arguments that Mr. Santian, prior to returning to work in July 2012, sought counsel, discussed the I-9, and specifically how to complete it. There's four references specifically in the record. I'd be happy to point them to you if you'd like. But it's a pretty tough case for you when you say that the law requires him to comply with this requirement, and you can't find the law that says he's required to do it. Well, the law does. Either, as Judge Preggerson pointed out, there's an inference that your client knew that he wasn't supposed to go through this process but required him to do it anyway, or there was a misunderstanding by the employee as to what the law really required. It's one or the other. There aren't any alternatives left that I can think of. The agreement was negotiated by USA Waste, by Mr. Santian, his lawyer, and the union. He agreed to the terms. He failed to satisfy the terms. And the agreement says if he fails to satisfy all the terms, USA Waste can terminate him. That's what they did. Yeah, but your client had to know that he'd never be able to satisfy that term and that there was an exception. No, there's no evidence of what my client knew. I never heard of that exception until we got into this. And so I wonder how many lawyers in this city are even aware of provisions like that or ever heard of E-Verify. So they knew he wasn't going to pass that requirement of E-Verify. And there's indications in some of the exclamations that are in the record where one of the people there that was dealing with him thought he heard that he had passed the E-Verify. He was very surprised that that happened. He couldn't believe it. Why would he not be able to believe it? Because someone told him that at that time. That's counsel's interpretation of an e-mail. Because he knew that in his mind that he could never pass it. And you have to attribute to him that he knew that there was or he assumed that he probably knew about that exception that wasn't made clear to the plaintiff here. Your Honor, there's no evidence in the record of what Mr. French has. He knew or didn't know. It was never deposed in the underlying proceeding. A lot of the inferences that my opponent here is asking for are all based on discovery that wasn't done. And that's not a basis to defeat summary judgment. No, that's all in the record. Everything I've told you is in the record. Do you want to briefly respond to counsel's argument as to the prima facie case for the age discrimination claim, relying on the fact that Ms. Diaz, if I recall correctly, said that his replacement was over 40, that omission leading to an inference that there must be a substantial age gap when coupled with Mr. Santillan's own testimony that older workers were targeted for these accident write-ups. How would you respond to that? The December termination is off the table in my mind. Any facts leading up to any claims related to that termination, age discrimination, retaliation for engaging counsel because all those events took place prior to Mr. Santillan's execution in May 2012 of the settlement release agreement and last chance agreement. To the extent that the court wants to consider those, as the trial judge noted, there is no substantial evidence or detailed evidence indicating a difference of age between the two individuals, between Mr. Santillan. I think there's about a 10-year difference. The evidence in the record, Your Honor, only indicates that Mr. Santillan's replacement, who was an existing employee of USA Waste, was over 40. Say that again. The only evidence in the record from Ms. Diaz's declaration is that Mr. Santillan's replacement was over the age of 40. Coupled with plaintiff's testimony that older workers were targeted for these accident write-ups. Coupled with Mr. Santillan's nonspecific, non-detailed testimony about four or five drivers who were older that may have been terminated. There's no evidence suggesting that actually happened. There's no evidence suggesting what the circumstances were. Why isn't that for a jury to decide? It sounds like you're making a closing argument to a jury saying, well, yeah, he said these things, but where's the beef? Why isn't that what this case is about? Because those claims and the facts supporting those claims were released in March 2012, or excuse me, May 2012. So you're saying he can't even, if he's trying to make a claim about the second termination was wrong, he can't even refer to the early ones? I don't think so, because he released all those claims, and claims don't exist without facts. But there's still facts underlying. This is not in a vacuum here. I mean, you know, yes, I see your argument that there was stuff that happened called Phase 1, settled. Now you're saying Phase 2, I was improperly terminated. Are you saying as a matter of law, a jury could not consider what happened in Phase 1 to determine what happened in Phase 2? I think they're off the table because of the release. What case do you cite to say that evidence is effectively suppressed? Statutes in California, talking about statutory construction, all the cases that cite... Well, he released the claim. He didn't release the ability to talk about the evidence and the facts that would support a subsequent claim. That sounds to me like a 4-3 determination and maybe a motion eliminated by your client if it goes back to trial. As I said, claims don't exist without facts. So again, those facts, those claims are off the table. I think we should all be talking about the July termination, and the termination was done in accordance with my client's rights under the settlement agreement. All right, I think we have your argument. Additional questions? No, it's fine. All right, thank you very much, counsel. Your Honors, just two quick points. Oh, just a minute. Let me have two minutes put on the clock. All right, go. Your Honors, on the latter argument that was just raised about the prima facie case, counsel repeatedly said there's no substantial evidence. Again, substantial evidence is not the standard. We're in a summary judgment in an employment discrimination case where the evidence leads to an inference of age discrimination, which is sufficient at this stage. Second, with regards to the pretext for the termination in July 2012, no, I'm sorry, yes, July 2012, as the court highlighted, there were those two separate reasons. One concerning the plaintiff's failure to comply with e-verify as a matter of law, which we know is not true, and two, the settlement agreement. And I want to focus on the settlement agreement for a minute and just stress that there was no time limit given to pass e-verify. And so there is no showing that he failed to meet the condition under the settlement agreement. I also want to highlight counsel's argument that there's no evidence as to his client's intention with regards to that termination. And I want to stress the e-mail that was referenced by the court as well, where you have a senior waste management employee e-mailing with Maria Diaz, saying, wow, I thought that would never happen. He got past e-verify? And I think while different people can read that e-mail differently, that's precisely why this is a jury question, unless the court has other questions. I don't. Thank you very much to both sides for your argument in this case. Very helpful. The matter is submitted.
judges: Pregerson, Nguyen, Owens